UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
:
GREAT LAKES EDUCATION LOAN :
SERVICES, INC., :
:
Appellant, :
: 1:20-cv-08050-GHW
-against- :
: MEMORANDUM OPINION &
SHELDON BERT LEARY, : ORDER
Appellee. :
:
------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Sheldon B. Leary borrowed from the United States Department of Education ("DOE") to send his children to college. Because he could not pay his debts, Mr. Leary filed for bankruptcy. Mr. Leary failed to name DOE as a party in the bankruptcy proceeding. Instead, he named Great Lakes Education Loan Services, Inc. ("Great Lakes"), which was DOE's loan servicer. After Great Lakes failed to appear, Mr. Leary received a default judgment against it, purporting to discharge his debts to Great Lakes. But the order did not actually discharge Mr. Leary's debts, because they were owned by DOE, not Great Lakes.

DOE continued to dun Mr. Leary, leading the Bankruptcy Court to reopen Mr. Leary's bankruptcy proceeding. The court ordered Great Lakes to appear before it, but Great Lakes did not respond. Ultimately, the Bankruptcy Court sanctioned Great Lakes for its failure to appear. Part of the sanction required Great Lakes to pay $354,629.62 to DOE—representing the full amount that Mr. Leary sought to discharge in the bankruptcy proceeding. The Bankruptcy Court characterized its award as a civil contempt sanction. Great Lakes appeals that order, arguing that it was instead a punitive, criminal contempt sanction. Because the Bankruptcy Court's order compensated Mr.

Leary for harm that was not caused by Great Lakes' contumacy, and did not permit Great Lakes to come into compliance with the orders that the Bankruptcy Court found Great Lakes to have violated, the Court concludes that the contempt sanction was criminal in nature and vacates that portion of the Bankruptcy Court's order.

## II. BACKGROUND

Mr. Leary borrowed $380,000.000 to send his three children to college. ECF 1 at 2.[1] But he was unable to pay his outstanding debt. So, on June 17, 2015, Mr. Leary filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code.[2] *Id.* In connection with that proceeding, Mr. Leary filed an adversary complaint against five creditors[3] seeking to discharge his student loan debt pursuant to § 523(a)(8) of the Bankruptcy Code. He claimed that "undue hardship" would result if he were forced to repay the student loan debt. *Id.* at 1. Mr. Leary identified Great Lakes as the owner of four of those student loan accounts, which amounted to $259,741 in debt. *Id.* at 7.

On September 2, 2015, the Bankruptcy Court issued a Summons and Notice of Pretrial Conference in Adversary Proceeding. ECF 2. Great Lakes failed to respond entirely. Consequently, on March 2, 2016, the Bankruptcy Court entered default judgment against Great Lakes, discharging Mr. Leary "from the student loan debt held by Great Lakes." ECF 26 (the "Default Judgment"). Unfortunately for Mr. Leary, the four loans that he had identified in his adversary proceeding as belonging to Great Lakes actually belonged to DOE. Great Lakes was only the loan servicer of the DOE loans for so long as they remained in good standing.[4] Because the loans belonged to DOE, rather than Great Lakes, the DOE loans were not discharged by the

---

[1] Unless otherwise noted "ECF" references are to the docket of the underlying bankruptcy proceeding: Adv. Proc. No. 15-01295(MG). "Dkt. No." references are to the docket of this case.
[2] Case No. 15-11583.
[3] Mr. Leary filed his adversary complaint against Discover Student Loans, EDSI, Great Lakes, Navient, and Wells Fargo Education.
[4] The Master Promissory Notes governing the loans explicitly state that the borrower should not go through the loan servicer for discharges due to death or bankruptcy. ECF 91 15:2–25.

2

Default Judgment—they were not "student loan debt held by Great Lakes" and DOE was not a party to the adversary proceeding. Default Judgment at 3.

Apparently believing that his loans had been discharged, Mr. Leary failed to pay DOE. The loans went into default. After the DOE loans defaulted, DOE sent Mr. Leary two letters threatening to garnish Mr. Leary's tax refunds and wages. In response, on January 2, 2020, Mr. Leary moved to reopen the Adversary Proceeding, seeking to enforce the Default Judgment discharging Mr. Leary from his student loan debt held by Great Lakes. Mr. Leary also requested that the Bankruptcy Court sanction Great Lakes and DOE for contempt of the Default Judgment. ECF 38.

The Bankruptcy Court reopened the adversary proceeding on January 23, 2020. ECF 40. The order reopening the adversary proceeding also required the parties to respond to Mr. Leary's contempt application by February 6, 2020. *Id.* Great Lakes did not respond to that order. On February 18, 2020 the Bankruptcy Court entered an order that reopened Mr. Leary's Chapter 7 bankruptcy proceeding and reimposed the automatic stay to guard against the garnishment of Mr. Leary's wages by DOE. ECF 45 at 3. The order also required that Mr. Leary and Great Lakes appear for a status conference on March 5, 2020 to address the issues raised by Mr. Leary's application for contempt sanctions. *Id.* The order threatened sanctions against Great Lakes should it fail to appear: "**If Great Lakes fails to appear at the hearing—by counsel, knowledgeable about the facts and circumstances of the services provided by Great Lakes to DOE in connection with any of the loans identified in paragraph 2 above . . . the Court will enter monetary sanctions against Great Lakes . . . .**" *Id.* at 4 (emphasis in original). While recognizing that DOE had not been named as a party in Mr. Leary's adversary proceeding, the Bankruptcy Court also urged DOE to appear at the hearing (in bold, underscored text). *Id.* Neither Great Lakes nor DOE appeared at the hearing.

3

On March 24, 2020, after Great Lakes' failure to appear, the Bankruptcy Court entered an order to show cause (the "First OSC"). ECF 55. The First OSC laid out the history of the case, including the February 18, 2020 order. The Bankruptcy Court explained that it was "deeply troubled by Great Lakes' continued failure to prosecute this case over the last four and a half years and to respond to the Court's Order to Reopen and Scheduling Order. This inaction has resulted in a substantial burden on Plaintiff, who must now defend his case against Great Lakes and/or DOE four years after he was discharged of his student loan debt in the Great Lakes Judgment by Default." *Id.* at 4. The order demanded that Great Lakes show cause as to why "Great Lakes Educational Loan Services Should Not Be Sanctioned In the Amount of $123,625.52 For Ignoring Multiple Court Orders . . . ." *Id.*[5] The First OSC further ordered that "Great Lakes shall appear at the hearing on the Order to Show Cause and *may* file a response to this Order to Show Cause on or before 5:00 p.m., April 20, 2020." *Id.* at 5 (emphasis added).

The First OSC ordered service on Great Lakes at four separate addresses that the Bankruptcy Court had identified "on its website and the internet." *Id.* at 5. And, unlike its February 18, 2020 order, the First OSC directed that a copy of the order be served on the responsible Assistant United States Attorney in the Southern District of New York. *Id.* at 6.

Great Lakes did not comply with the Bankruptcy Court's order requiring Great Lakes to attend the show cause hearing on April 27, 2020. At the hearing, the Bankruptcy Court determined "that sufficient cause has been established to impose monetary sanctions on Great Lakes in the amount of $123,625.52 for Great Lakes' continued stonewalling in this case." *See* ECF 60 at 4-5. On April 29, 2020, the Bankruptcy Court ordered that Great Lakes pay $123,625.52 to the Clerk of Court. *Id.* at 5. Great Lakes did not pay the sanction as ordered by the Bankruptcy Court.

---

[5] The $123,625.52 amount of the proposed sanction represented the sum of $61,377.58 in accrued interest and $62,247.94 in collection costs claimed by DOE. ECF 55 at 4. DOE claimed at the time that Mr. Leary owned at total of $409,613.69, consisting of $285,988.17 in unpaid principal, plus the accrued interest and costs. *Id.*

DOE did appear at the April 27, 2020 hearing through counsel. The Bankruptcy Court asked DOE a number of questions during the conference. DOE responded to those questions by letter on June 10, 2020. ECF 72. The letter provided some explanation for Great Lakes' failure to respond to the Court's prior orders. A brief detour is warranted to lay out Great Lakes' explanation for its failure to participate in Mr. Leary's bankruptcy proceeding, and to respond to the Bankruptcy Court's orders up to this point in the narrative.

Great Lakes' brief in this appeal aptly describes the reasons for its failure to comply: "[d]ue to rare, unintentional, and regrettable processing errors as to papers served in the adversary proceeding, Great Lakes did not appear or defend against Mr. Leary's complaint until August 13, 2020." Dkt. No. 13 at 10. During the period of the initial adversary proceeding, the policy of Great Lakes' bankruptcy unit was to forward copies of adversary proceedings related to non-defaulted loans, to DOE and Great Lakes' legal department. ECF 82-1 ¶ 10. While that was their policy, Great Lakes' bankruptcy unit did not forward adversary filings to its legal department, with the exception of one stipulated dismissal of another party. *Id.* ¶ 14. Instead, it sent them to DOE alone. *Id.* DOE received notice of the original adversary proceeding in Mr. Leary's case, but determined that there was no need to appear in the case because DOE had not been named as a party. ECF 72 at 3-4. As a result of Great Lakes' failure to follow its own internal policy, the company's legal department "was unaware of this adversary proceeding, failed to respond, and failed to appear until alerted by the DOE's counsel on August 10, 2020." ECF 82-1 at ¶ 15.

On June 16, 2020, Mr. Leary filed an Amended Complaint naming DOE as a defendant for the first time, and describing Great Lakes as DOE's agent. ECF 74 at 2. On July 16, 2020, DOE answered. ECF 75.

On August 10, 2020, the Bankruptcy Court issued two orders. One merely scheduled a status conference for the case. ECF 77. The other was more consequential: the Bankruptcy Court

5

again ordered Great Lakes to show cause why it should not be sanctions as a result of its "failure to comply with multiple court orders requiring it to respond and appear before [the Bankruptcy Court]." ECF 76 (the "Second OSC") at 1. The Second OSC again detailed the history of the case and the Bankruptcy Court's warnings to Great Lakes about the consequences of non-compliance. The Bankruptcy Court described the First OSC and noted that Great Lakes had failed to pay the sanctions awarded ordered in its previous sanctions order. *Id.* at 4-5. The Bankruptcy Court substantially upped the ante for continued non-compliance and stated that it would "consider whether to impose further monetary sanctions on Great Lakes in the amount of $416,877.56. This amount represents the total financial liability Plaintiff potentially faces in connection with his student loan debt, allegedly still owed to the DOE." *Id.* at 6.

The Second OSC ordered Great Lakes to "appear at the hearing on the Second Order to Show Cause and . . . file a written response to [the] Second Order to Show Cause on or before August 24, 2020 at 5 p.m." *Id.* at 7. As noted above, counsel for DOE alerted counsel for Great Lakes about the Second OSC. Three days later, counsel for Great Lakes appeared—staring down the barrel of a substantial amount of threatened sanctions. ECF 80.

As ordered, Great Lakes filed its response to the Second OSC on August 24, 2020. ECF 82. The response laid out the explanation for its failure to respond to the Bankruptcy Court's prior orders—explaining that the legal department of the company had not been aware of the issue, and that they had forwarded the notices to DOE, the true party in interest. *Id.* Great Lakes' counsel also attended the telephonic hearing and case management conference on August 31, 2020.

The Bankruptcy Court was not persuaded by Great Lakes' submissions. On September 8, 2020, the Bankruptcy Court issued a comprehensive opinion and order, holding Great Lakes in civil contempt (the "Order"). ECF 83. The Bankruptcy Court was troubled by the concession made by Great Lakes that "*Great Lakes had in fact been served with multiple orders, all of which Great Lakes ignored*

6

*until counsel filed a response on August 24, 2020 . . . ."* *Id.* at 4 (emphasis in original). Against that backdrop, the Bankruptcy Court did not find believable Great Lakes' argument that its inaction had resulted from an "unintentional procedural error." *Id.*

> The Court finds this cavalier excuse wholly unsatisfactory. Great Lakes' indifference to this proceeding—in which it has been a named defendant since September 2015—seriously prejudiced Mr. Leary. To obtain a discharge of these student loan debts, Mr. Leary would have been required to show that, as of September 2015 when the complaint was filed, that his student loan debt would impose an "undue burden" on him under 11 U.S.C. § 523(a)(8). That is a difficult feat at any time, but nearly impossible now so many years later. Great Lakes' conduct highlights the exploitative tactics perpetrated by Great Lakes, seemingly with DOE's knowledge. For the reasons explained below, the Court, therefore, orders Great Lakes to pay sanctions in the amount of $354,629.62 to DOE, in full satisfaction of the amount DOE contends it is owed by Mr. Leary. To be clear, the sanctions of $354,629.62 payable to DOE is in lieu of the sanctions of $123,625.52 that Great Lakes was previously ordered to pay to the Clerk of the Court. Additionally, however, the Court orders Great Lakes to pay $24,000 to Mr. Leary for the harm he suffered over the last five years as a result of negative credit ratings, aggravation, loss of sleep and worry, harassment, pain and suffering, in addition to contributing marital strain. Finally, upon receiving payment from Great Lakes, DOE is required to report to all credit reporting agencies that all of Mr. Leary's student loan debt has been paid in full.

*Id.* at 5 (internal citation omitted).

The Bankruptcy Court justified its award because of its view of the prejudicial effect of Great Lakes' non-compliance on Mr. Leary, which it believed required the imposition of a "heavy compensatory sanction." *Id.* at 19. The Bankruptcy Court explained the rationale for its decision in part as follows:

> The record in this case reveals a long history of Great Lakes' gross negligence (or worse) and blatant disregard for Mr. Leary, this Court and this Court's orders. Great Lakes' inaction over the last five years has made it impossible for Mr. Leary to prosecute his case and have finality over his student loan debt liability. Such conduct unquestionably warrants civil contempt sanctions. Therefore, the Court imposes a heavy compensatory sanction on Great Lakes to compensate Mr. Leary for the financial liability he now faces as a result of Great Lakes' stonewalling, and to coerce Great Lakes as a party to this case to finally comply with this Court's orders.

*Id.*

The Bankruptcy Court evaluated its authority to impose civil contempt sanctions in this

situation.  In doing so, the Bankruptcy Court recognized that the "purposes of civil contempt is to 'coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance.'"  *Id.* at 21 (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1062 (2d Cir. 1995)).  The Bankruptcy Court also recognized that in "determining an appropriate sanction, the court must ensure that the civil contempt sanction is 'coercive' or 'compensatory' and not 'punitive.'"  *Id.* (quoting *Gucci Am. v. Bank of China*, 768 F.3d 122, 144 (2d Cir. 2014)).  The Bankruptcy Court concluded that its orders were clear and unambiguous, that there was clear and convincing evidence of Great Lakes' non-compliance, and that Great Lakes had not diligently attempted to comply with the orders, and thus, Great Lakes was in civil contempt and could be sanctioned.  *Id.* at 21-27.

The Bankruptcy Court reasoned that the sanction that it imposed was appropriate to compensate Mr. Leary for the effect of Great Lakes' noncompliance.  Among other things, the Bankruptcy Court explained that "Great Lakes' indifference to this proceeding caused Mr. Leary to operate under the reasonable assumption that he could emerge from bankruptcy with a clean slate and discharged debt.  In that regard, Mr. Leary relied on Great Lakes' admission to the well pleaded allegations in his Complaint."  *Id.* at 28.  The Bankruptcy Court concluded that it "must compensate Mr. Leary and DOE for the cumulative harm it caused through its five years of stonewalling.  Those damages include the unpaid balance of the DOE student loans that Mr. Leary sought to discharge in his adversary proceeding, as well as the other damages he suffered personally."  *Id.* at 29.

The Bankruptcy Court viewed its sanction as "intended to induce Great Lakes to comply with this Court's orders."  *Id.* at 30.  The Bankruptcy Court held Great Lakes in contempt and ordered that Great Lakes pay $354,629.62 to DOE and $24,000 to Mr. Leary.  The Bankruptcy Court also ordered DOE to report to all credit reporting agencies that Mr. Leary's debt had been paid in full.  Great Lakes paid both sanctions but promptly mounted this appeal of the Order.

8

Great Lakes filed a notice of appeal on September 22, 2020. ECF 88; Dkt. No. 1. The Court issued an order directing that Great Lakes' brief be filed within 30 days after the availability of the record on appeal. Dkt. No. 3. That order also directed that Mr. Leary file any opposition no later than 30 days after the submission of Great Lakes' brief. Great Lakes filed its brief in support of the appeal on January 19, 2021. Dkt. No. 13. The brief was served on Mr. Leary. Dkt. No. 14. On March 12, 2021, the Court ordered that Great Lakes serve its brief and ancillary materials on DOE, and also reminded Mr. Leary of his opportunity to respond to Great Lakes' brief. Dkt. No. 15. On March 17, 2021, DOE informed the Court that it took no position on Great Lakes' appeal and declined to submit a brief. Dkt. No. 17. On April 2, 2021, the Court issued another order noting that both DOE and Mr. Leary had been provided an opportunity to respond to the appeal, but that neither had chosen to do so. Dkt. No. 19. The Court informed the parties that it considered the appeal to be fully briefed.

## III. LEGAL STANDARD

### a. Jurisdiction

A district court has jurisdiction to hear appeals from bankruptcy courts under 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a)(1), (3). Part VIII of the Federal Rules of Bankruptcy Procedure outlines the procedure governing such appeals. Fed. R. Bankr. P. 8001. "A bankruptcy judge's order is final if it completely resolve[s] all of the issues pertaining to a discrete claim, including issues as to the proper relief." *In re Pegasus Agency, Inc.*, 101 F.3d 882, 885 (2d Cir. 1996) (internal citations omitted, modification in original). The Order is a final order. There is no indication that the Order will be reconsidered. After entering the Order, the

9

Bankruptcy Court closed the bankruptcy proceeding. Great Lakes filed its notice of appeal timely. ECF 87.

### b. Standard of Review

The Court reviews the Bankruptcy Court's award of sanctions for abuse of discretion. *In Re Highgate Equities, Ltd.*, 279 F.3d 148, 151 (2d Cir. 2002). Abuse of discretion is "one of the most deferential standards of review." *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 121 (2d Cir. 2001). Still, a court "necessarily abuses its discretion if its conclusions are based on an erroneous determination of law, or on a clearly erroneous assessment of the evidence." *Id.* And, although the decision to impose sanctions is uniquely within the authority of the bankruptcy court, nevertheless, the reviewing court must "ensure that any such decision is made with restraint and discretion." *Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 141 (2d Cir. 2000) (internal quotations and citations omitted).

### c. Civil and Criminal Contempt Sanctions Generally

Contempt sanctions can be civil or criminal. Each form of sanctions has its own purposes and characteristics. "[W]hether a contempt is civil or criminal turns on the 'character and purpose' of the sanction involved." *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827 (1994). That determination "turns on several factors, including whether the sanction is intended to be compensatory or punitive; whether it is payable to the court or to the injured party; whether it is based on past wrongful conduct or is intended to coerce future compliance; and whether any opportunity to purge the sanction is provided." *Mackler*, 225 F.3d at 142.

"[A] sanction imposed on a party held in civil contempt generally may serve either or both of two purposes: to coerce the contemnor into complying in the future with the court's order, or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.*, 673 F.2d 53, 56-57 (2d Cir. 1982). Civil contempt sanctions

may be compensatory, or both, but they "may not be imposed as a purely punitive measure." *Paramedics Electromedicina Com., Ltda v. GE Med. Sys.*, 369 F.3d 645, 657 (2d Cir. 2004). By contrast, criminal contempt sanctions "are intended to punish a contemnor or to vindicate a court's authority." *In re Stockbridge Funding Corp.*, 158 B.R. 914, 917 (S.D.N.Y. 1993).

### d. The Challenged Sanction Was Not Compensatory

The challenged sanction imposed by the Bankruptcy Court was not compensatory because the amount of Mr. Leary's debt that it ordered Great Lakes to repay did not result from Great Lakes' failure to comply with the Bankruptcy Court's orders. "Monetary sanctions for civil contempt traditionally have been awarded to compensate the plaintiff for injury caused by past noncompliance or to prevent continued disobedience . . . . Moreover, as this type of award 'goes no further than to give to the plaintiff the profits derived by the defendant's wrongful conduct: it does not take from the defendant assets not related to its wrongful conduct,' it is not punitive." *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989) (quoting *Perfect Fit Indus., Inc.*, 673 F.2d at 56-57). "When the purpose is compensatory, the order should be fashioned so as to reimburse the injured party for his actual damages." *Perfect Fit Indus.*, 673 F.2d at 56-57.

At the outset, it is important to emphasize that Great Lakes is not challenging one aspect of the Bankruptcy Court's sanction—namely, the order that Great Lakes pay Mr. Leary $24,000. That amount represented the full amount requested by Mr. Leary to compensate him for "the harm he suffered over the last five years as a result of negative credit ratings, aggravation, loss of sleep and worry, harassment, pain and suffering, in addition to contributing marital strain." Order at 5. The question here is limited to whether the separate award of $354,629.62 in sanctions, representing the amount that Mr. Leary sought to discharge in his bankruptcy is compensatory.[6] It is not.

---

[6] While the contempt award is payable to a third party, DOE, rather than to Mr. Leary directly, the award is clearly designed to benefit Mr. Leary by eliminating his debt.

11

In ordering that Great Lakes pay DOE $354,629.62 on Mr. Leary's behalf, the Bankruptcy Court did not compensate Mr. Leary for his actual damages. Instead, it benchmarked its award against Mr. Leary's expectations about the effect of the Default Judgment—despite the fact that those expectations were wrong. Explaining why it viewed the large sanction award to be compensatory, the Bankruptcy Court reasoned that Great Lakes "caused Mr. Leary to operate under the reasonable assumption that he could emerge from bankruptcy with a clean slate and discharged debt. In that regard, Mr. Leary relied on Great Lakes' admission to the well pleaded allegations in his Complaint." Order at 28. The court continued: "Mr. Leary relied on Great Lakes' admission, the Great Lakes Judgment by Default and the Court's order dismissing this case as a basis to believe that Great Lakes was the correct defendant in this case, that Great Lakes held his student loans, and that his student loan debt was discharged." *Id.* at 28-29.

As described, the Bankruptcy Court's sanction was designed to place Mr. Leary in the position he thought he was in, rather that the position in which he actually found himself. As a result, rather than compensating Mr. Leary for his actual damages and placing him in the position that he would have been in but for Great Lakes' failure, the Bankruptcy Court placed him in a substantially better position. Mr. Leary's belief that the Default Judgment discharged his debt was wrong. He failed to name the correct party in his initial adversary proceeding, and, as a result, his debt to DOE was not discharged. That is undisputed—it is why he filed a new adversary proceeding. The Bankruptcy Court states in its opinion that it structured its award to put Mr. Leary in the position that he believed he was in until he received DOE's dunning letters. But while Mr. Leary may have believed that he had been discharged for a period of time, he was mistaken. Because the award was benchmarked against Mr. Leary's erroneous beliefs, rather than reality, the award placed Mr. Leary in a substantially better place than he had been in previously. That award was not compensatory because it did not compensate Mr. Leary for actual damages caused by Great

12

Lakes' misconduct.

To be clear, the principal amount of Mr. Leary's debt to DOE did not result from Great Lakes' contumacy. It resulted from his borrowing. The Bankruptcy Court inaccurately described its sanctions award as compensating Mr. Leary for "the financial liability he now faces as a result of Great Lakes' stonewalling . . . ." Order at 19. Mr. Leary's financial liability existed before the bankruptcy proceedings and the Bankruptcy Court's orders. In plain terms, Mr. Leary's debt was not caused by Great Lakes' failure to comply with the Bankruptcy Court's orders.

The sanction is clearly not compensatory for another reason: Mr. Leary's debt would not have been discharged automatically if Great Lakes had complied timely with the Bankruptcy Court's orders. Mr. Leary was required to show that his student loan debt would impose an "undue burden" on him under 11 U.S.C. § 523(a)(8). As the Bankruptcy Court observed, "this is a difficult feat at any time . . . ." Order at 5. The Bankruptcy Court seems to have reasoned that if Great Lakes had complied with its orders timely, Mr. Leary might have learned that DOE was the proper defendant earlier, and, thus, have been in a better position to litigate whether payment of the loans represented an "undue burden." Maybe so. However, Great Lakes' compliance, and the earlier appearance of DOE, would not have resulted in the discharge of Mr. Leary's loans: he would have been required to litigate that issue with DOE under the demanding "undue burden" standard. The sanction, again, does not place Mr. Leary in the position that he would have been in had Great Lakes complied earlier—namely, having to litigate against DOE regarding whether payments on the loans are an "undue burden." (That would have happened had the Bankruptcy Court not closed Mr. Leary's adversary proceeding against DOE after entering the challenged sanction.) Instead, the Bankruptcy Court's contempt sanction put Mr. Leary in a substantially better position—effectively discharging his debts without having to make the showing required by law. For that reason, the sanction is not compensatory.

13

The award calls to mind an old proverb: "If wishes were horses, beggars would ride." Because the Default Judgment did not in fact expunge his debt to DOE, Mr. Leary had only wishes. The Bankruptcy Court's Order imposed an award of sanctions to compensate Mr. Leary as if he had horses. Because the challenged sanction did not remediate actual damages caused by Great Lakes' contumacy, it was not compensatory. If allowed to stand, the Order would allow Mr. Leary to ride off with a substantial windfall.

### e. The Sanction Was Not Coercive

The sanction was not coercive because it did not provide Great Lakes the opportunity to purge its contempt. "A sanction coerces a defendant when it 'force[s] the contemnor to conform his conduct to the court's order.' Where . . . a sanction does not compensate the party for an injury caused by the contemptuous act, a sanction is civil only if its purpose is to coerce the contemnor into compliance." *CBS Broadcasting Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 101 (2d Cir. 2016) (quoting *New York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 93, 95 (2d Cir. 1998)). "In *Bagwell*, the Supreme Court delineated the nature of coercion in civil contempts and determined that a hallmark of coercive sanctions was that 'the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket.'" *CBS Broad.*, 814 F.3d at 101 (quoting *Int'l Union,*, 512 U.S. at 828). "An opportunity to purge is essential; '[t]hus a flat, unconditional fine totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance.'" *Id.* (quoting *Bagwell*, 512 U.S. at 829); *see also In re Stockbridge*, 158 B.R. at 919 ("[s]anctions which accrue daily until compliance are generally civil, while fixed penalties are usually criminal and, unlike civil contempt, cannot be purged.").

The sanction was not coercive because it was not structured to compel compliance with one or more particular orders issued by the Bankruptcy Court, and because it did not provide Great

14

Lakes with an opportunity to purge. The Order states that "[s]anctioning Great Lakes in the amount of $354,629.62 is also intended to induce Great Lakes to comply with this Court's orders." Order at 30. But the Bankruptcy Court left no opportunity for Great Lakes to comply. The Order specifically states that "[a]fter the sanctions are satisfied in full, the adversary proceeding, and the chapter 7 case, will be closed again." Order at 32. Because the Order provided Great Lakes no opportunity to come into compliance with the Bankruptcy Court's orders, it was not a coercive civil contempt order; it was criminal.

### f. The Sanction Is Punitive

The $354,629.62 fine imposed on Great Lakes is punitive. "A sanction imposed to punish for an offense against the public and to vindicate the authority of the court, that is, not to provide private benefits or relief, is criminal in nature." *Terry*, 886 F.2d at 1350-51.

The rhetoric of the Bankruptcy Court's opinion and preceding orders reveal that the Bankruptcy Court acted to punish improper conduct and to vindicate its authority. The language of the Order and the preceding orders are suffused with the Bankruptcy Court's understandable frustration at the conduct of Great Lakes and DOE over the life of the litigation. In the First OSC, as noted, the Bankruptcy Court noted that it was "deeply troubled" by Great Lakes' "continued failure to prosecute this case over the last four and a half years *and* to respond to the Court's Order . . . ." First OSC at 4 (emphasis added). The Order laments that "Great Lakes seemingly believed it could ignore with impunity the *pro se* complaint filed by a Chapter 7 debtor. It can't and it must pay the price for doing so." Order at 29. The Order further states that it is imposing a sanction not only for the breach of specific orders, but for the harm Great Lakes "caused through its five years of stonewalling." *Id*. While not dispositive, one caption of the analysis suggestively reads "The Court's Authority to Punish for Civil Contempt." *Id.* at 19.

In sum, in reviewing the Order and the preceding orders to show cause, the Court is left

15

with the firm impression that when the Bankruptcy Court announced that the award was "intended to induce Great Lakes to comply with this Court's orders," it was referring to all of its orders—its orders prior to the entry of the Default Judgment and orders that it might issue in the future—rather than the specific ones that were identified in the two orders to show cause. In other words, the Bankruptcy Court imposed a punitive sanction to vindicate its authority. While labeled by the Bankruptcy Court as civil, the language of the Order and the preceding orders issued by the Bankruptcy Court supports the conclusion that the purpose of the contempt order was punitive.

## IV. CONCLUSION

"[T]he characterization of a contempt is determined more by the purpose and character of the sanction than by the characterization given by the court below." *See In re Stockbridge*, 158 B.R. at 919. The sanction imposed here was neither compensatory nor coercive. The rhetoric of the Bankruptcy Court's order reveals its punitive character.

The portion of the Bankruptcy Court's order requiring Great Lakes to pay $354,629.62 to DOE is vacated. Because Great Lakes has already paid the challenged amount to DOE, DOE is ordered to return the amount of Great Lakes' payment to Great Lakes. Because the portion of the Bankruptcy Court's order that resulted in the satisfaction of Mr. Leary's debt has been vacated, the Bankruptcy Court's order requiring DOE to report Mr. Leary's debt as having been paid in full is also vacated.

The Clerk of Court is directed to enter judgment in favor of Great Lakes and to close this case. The Clerk of Court is further directed to mail a copy of this memorandum opinion and order

to Mr. Leary by certified mail.

SO ORDERED.

Dated: June 22, 2021
New York, New York

_____
GREGORY H. WOODS
United States District Judge